IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Judex Desir,<br><br>    Petitioner,<br><br>v.<br><br>Warden Anthony Padula,<br><br>    Respondent. | Civil Action No.8:10-488-HFF-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

The Petitioner, a state prisoner, seeks habeas relief pursuant to Title 28, United States Code, Section 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. # 9.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on February 26, 2010.[1] On May 17, 2010, the Respondent moved for summary judgment. By order filed May 18, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On June 11, 2010, the Petitioner filed a response opposing the Respondent's Summary Judgment Motion.

---

[1] This filing date reflects that the envelope containing the petition was stamped as having been received on February 26, 2010, at the Lee Correctional Institution mailroom. (Pet. Attach.# 3.) *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

## **PROCEDURAL HISTORY**

The Petitioner is currently incarcerated in the Lee Correctional Institution ("LCI"). In April 2003, the Petitioner was indicted for armed robbery, conspiracy to commit armed robbery, pointing and presenting a firearm, and four counts of kidnaping. (App. 773-786.) R. Nicholas Felix, Esq., represented the Petitioner on these charges. A jury trial was held December 15-18, 2003, with the Honorable Jackson V. Gregory presiding. Prior to trial, the prosecutor nolle prossed the indictment for pointing and presenting a firearm. (App. 42-43; 777.) The jury found the Petitioner guilty on the remaining charges. (App. 661-662.) Judge Gregory sentenced the Petitioner to twenty-two years on the armed robbery and on each of the kidnaping charges; and five years for the conspiracy. All of the sentences were to run concurrently. (App. 671.)

On December 22, 2003, the Petitioner moved for a new trial and to reconsider his sentence. (App. 690-694.) On March 11, 2004, the trial judge denied the motions. (App. 672, 687.) The Petitioner appealed. Assistant Appellate Defender Eleanor Duffy Cleary of the South Carolina Office of Appellate Defense represented the Petitioner on appeal. On October 17, 2005, she filed a petition to be relieved as counsel and an *Anders*[2] brief raising the following issue: "The trial court erred in refusing to charge the jury that the burden is upon the State to prove beyond a reasonable doubt that appellant was present at the scene of the crime since appellant presented evidence of an alibi." (State's Return Attach. # 9 at 3.)

On December 7, 2005, the Petitioner filed a pro se brief, and raised the following issue, quoted verbatim:

> Did the trial court err by refusing to charge the jury with an "Alibi Charge," and or Alibi instruction when the appellant produced

---

[2] *Anders v. California*, 386 U.S 738 (1967).

> evidence that he was elsewhere during the commission of the crime. The jury requested to rehear appellant's testimony along with testimony given by his alibi witness, concerning the time before, during, and after the commission of the offense.

(State's Return Attach. # 9 at 15.) On March 9, 2006, the South Carolina Court of Appeals issued an unpublished opinion dismissing the appeal and granting counsel's motion to be relieved. (State's Return Attach. # 9 at 26-27.) On March 21, 2006, the Petitioner resubmitted his pro se brief which the court construed as a petition for rehearing. On April 20, 2006, the South Carolina Court of Appeals denied the petition. (State's Return Attach. # 9 at 28-41.) The remittitur was sent down on May 25, 2006. (State's Return Attach. # 9 at 44.)

On May 31, 2006, the Petitioner filed an application for post-conviction relief ("PCR") raising the following grounds for relief:

> (a) Subject Matter Jurisdiction;
>
> (b) Due Process Violation/Constitutional Violations;
>
> (c) Ineffective Assistance of Counsel.

(App. 716.) On February 5, 2007, the Petitioner amended his PCR application to allege the following, quoted verbatim:

> (A) Was counsel ineffective failing to object to the defective indictments prior to trial as mandated by S.C. Code Ann. § 17-19-90?
>
> (B) Was counsel ineffective failing to object to the trial courts instructions to the jury that constructively amended "all" of Petitioner's indictment(s)?

(App. 733, 737.) On April 16, 2008, an evidentiary hearing was held before the Honorable Michael G. Nettles. (App. 744.) Cory Howerton Fleming, Esq., represented the Petitioner. *Id.* On May 13, 2008, Judge Nettles denied the Petitioner's PCR application. (App. 768-72.) The Petitioner timely appealed and Appellate Defender Robert M. Pachak, of the South Carolina Commission on Indigent Defense, represented the Petitioner on appeal.

On November 14, 2008, Pachak filed a petition to be relieved as counsel and a *Johnson* Petition for Writ of Certiorari in the South Carolina Supreme Court raised the following issue: Whether defense counsel was ineffective in failing to object to defective indictments? (State's Return Attach. # 10 at 3.)

On December 31, 2008, Petitioner filed a pro se response raising the following issues, quoted verbatim:

> (1) Whether the P.C.R. court"s order of dismissal failed to make the required "specific findings of fact" concerning the Petitioner's claim of ineffective assistance of counsel pursuant to S.C. Code Ann. § 17-27-80?
>
> (2) Whether the P.C.R. court"s order of dismissal denying post conviction relief, failed to "address" petitioner's claim that trial counsel was ineffective for failing to object to the trial court's instructions to the jury that constructively amend all of the petitioner's indictment, is inadequate as a final order?
>
> (3) Whether the P.C.R. court erred in failing to find trial counsel ineffective for failing to object to the defective indictments prior to trial as mandated by S.C. Code Ann. § 17-19-90?

(State's Return Attach. # 10 at 13.)  The Petitioner also filed an amended pro se petition. (State's Return Attach. # 10 at 56-66.)  On April 10, 2009, the South Carolina Supreme Court denied the petition. (State's Return Attach. # 10 at 57.)  On April 22, 2009, the Petitioner then filed a petition for a rehearing. (State's Return Attach. # 10 at 58-60.)  On May 28, 2009, the South Carolina Supreme Court denied the petition and the remittitur was sent down on May 28, 2009.  (State's Return Attach. # 10 at 65-66.)

On April 20, 2009, the Petitioner filed a second PCR application, raising the following grounds for relief, quoted verbatim: (1) ineffective assistance of counsel; and (2) P.C.R. court failed to comply with S.C. Code Ann. § 17-27-80.  (State's Return Attach. # 11 at 3 - 2009 PCR App. 3.)  On March 8, 2010, the Honorable Carmen T. Mullen conditionally dismissed the Petitioner's second PCR application as successive.  (State's Return Attach. # 11 at 15-19.)

4

In this federal habeas action, the Petitioner raises the following grounds for relief, quoted verbatim:

> **Ground One**: Ineffective Assistance of Counsel
>
> (A) My trial counsel was ineffective, when he failed to object to my fatally defective indictments prior to trial as required by S.C. Code Ann. § 17-19-90. Denying me the effective assistance of counsel as guaranteed by the Sixth Amendment;
>
> B) I was denied my Sixth Amendment Right to the Effective Assistance of Counsel, when counsel failed to object to the Trial Count's instructions to the jury that constructively amended all of my indictments that resulted in me being denied my right to a fair trial that is protected by the Fourteenth Amendment's Due Process Clause.
>
> **Ground Two**: Court erred in failing to charge requested charge of alibi.
>
> (A) The Trial Court erred in refusing to charge the jury with an 'Alibi Charge', or an 'Alibi Instruction', when I produced evidence that I was elsewhere when the crime occurred.

(Pet. and Attachs.)

## **APPLICABLE LAW**

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**HABEAS STANDARD OF REVIEW**

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or

6

> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

**EXHAUSTION AND PROCEDURAL BAR**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (I) there is either an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be

filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

9

. . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental

miscarriage of justice" has occurred.  *Murray*, 477 U.S. 478.  A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim.  *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default.  *Murray*, 477 U.S. at 492.  To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions.  *United States v. Frady*, 456 U.S. 152 (1982).

## DISCUSSION

**Ground One**

In Ground One, the Petitioner claims his trial counsel was ineffective for failing to object to allegedly defective indictments and a jury instruction that he alleges constructively amended all of his indictments.  (Pet. 6 & Attachs.)  The PCR judge found that the Petitioner failed to prove his trial counsel's performance was deficient or any prejudice. (PCR App. 771.)

The Respondent argues that this issue is procedurally barred and without merit. The Respondent acknowledges that the Petitioner raised this issue in his pro se brief, but argues that because this issue was not addressed in State court's order of dismissal, it was not available for appeal.[3]  Further, the Respondent, citing *Marlar v. State*, 653 S.E.2d 266

---

[3]The Respondent states that he did not initially reference the supplemental pleading in his memorandum supporting summary judgment inadvertently.  (Dkt. # 15- Resp.'t's Reply Mem. at 2.)

11

(S.C. 2007), contends the Petitioner should have filed a Rule 59(e) motion. (Dkt. # 15-Resp't's Reply Mem. at 3.)

If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, the Petitioner must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 375 S.C. 407, 653 S.E.2d 266 (S.C. 2007). In *Marlar*, the South Carolina Supreme Court clarified that its previous failure to consistently apply Rule 59(e) was based upon "unique" circumstances, and that these unique circumstances "do not change the general rule that issues which are not properly preserved will not be addressed on appeal." *Marlar*, 653 S.E.2d at 267. In *Bostick v. Stevenson,* 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, in cases in which there was a PCR ruling prior to November 5, 2007, the court should not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar. Here, however, the PCR court issued its order denying the Petitioner relief on May 13, 2008, well after the decision in *Marlar*. Thus, the Petitioner's claim is procedurally barred as the PCR Court did not rule on this issue and the Petitioner did not file a Rule 59(e) motion. However, in any event, this claim also fails on its merits.

To prove ineffective assistance of counsel, the Petitioner must show that trial counsel's performance was deficient. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). An attorney's performance is deficient when it is not reasonable under prevailing professional norms. *Id.* at 688. The Petitioner also must show that he was prejudiced by counsel's alleged deficient performance, in that because of counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. There is a strong

12

presumption that counsel's conduct is within the wide range of reasonable professional assistance, and the court is required to grant broad deference to scrutinizing an attorney's performance. *Id.* at 688-89.

Specifically, the Petitioner alleges that the trial judge constructively amended the indictments through his jury instructions. He contends that such amendments were "per se violation[s] of the grand Jury provisions of the Fifth Amendment of the United States Constitution" violative of the ruling of the Supreme Court's opinion in *Stirone v. United States*, 361 U.S. 212, 215-216 (1960), wherein the Court held that a constructive amendment to an indictment violated a defendant's Fifth Amendment right under the grand jury clause. (Pet'r's Mem. Opp. Summ. J. Mot. 12-13, 19.) The Fifth Amendment to the United States Constitution in relevant part provides: "No person shall be held to answer for a capitol, or otherwise infamous crime, unless on a presentment or Indictment of a Grand Jury . . ." However, the Fifth Amendment's grand jury clause has never been extended to the states. As the Supreme Court stated in *Alexander v. Louisiana,* 405 U.S. 625, 633 (1972):

> Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or Indictment by a grand jury. In *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the Court held that because trial by jury in criminal cases under the Sixth Amendment is "fundamental to the American scheme of justice," *id*., at 149, 88 S.Ct., at 1447, such a right was guaranteed to defendants in state courts by the Fourteenth Amendment, but the Court has never held that federal concepts of a "grand jury," binding on the federal courts under the Fifth Amendment, are obligatory for the States. *Hurtado v. California,* 110 U.S. 516, 638, 4 S.Ct. 111, 122, 28 L.Ed. 232 (1884).

Based on the clear holding in *Alexander*, the legality of an amendment to a state court indictment is a matter of state law and claims based on errors of state law are not cognizable on federal habeas review. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). *Barbe*

13

*v. McBride,* 2010 WL 3672263 (N.D.W.Va. 2010). An indictment, in South Carolina, is a notice document. *State v. Gentry,* 610 S.E.2d 494, 500 (S.C. 2005). South Carolina law allows for such amendments to an indictment. S.C. Code Ann. § 17-19-100 provides:

> If (a) there be any defect in form in any indictments or (b) on the trial of any case there shall appear to be any variance between the allegations of the indictment and the evidence offered in proof thereof, the court before which the trial shall be had may amend the indictment (according to the proof, if the amendment be because of a variance) if such amendment does not change the nature of the offense charged. After such amendment the trial shall proceed in all respects and with the same consequences as if the indictment had originally been returned as so amended, unless such amendment shall operate as a surprise to the defendant, in which case the defendant shall be entitled, upon demand, to a continuance of the cause.

*Id.*

The PCR court found that the indictments outlined the nature of the offense in plain language (App. 771) and concluded that the Petitioner had notice of the charges against him. The failure of the Petitioner's counsel to object to the amendment of the indictment, therefore, was not objectively unreasonable under the circumstances. Accordingly, the undersigned finds that the Petitioner has failed to establish deficiency under the first prong of *Strickland*. The Petitioner also fails to prove any resulting prejudice under the second prong of *Strickland.* There has been no showing that an objection by trial counsel would have changed the outcome of the proceedings. The Petitioner was convicted of the same crimes for which he was indicted and any such objection would have been fruitless. As such, the Petitioner has failed to demonstrate prejudice under *Strickland.* Accordingly, this claim is without merit and should be dismissed.

**Ground Two**

In Ground Two, the Petitioner alleges that the trial court erred by refusing to give an alibi instruction. The Respondent contends this issue is without merit. The undersigned agrees.

14

"It is not the province of a federal habeas court to reexamine state-court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). Because ordinarily "instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues," *Grundler v. North Carolina*, 283 F.2d 78-98, 802 (4th Cir. 1960), claims involving jury instructions are not cognizable on federal habeas review, unless the giving of the instruction violated a right guaranteed by the Fourteenth Amendment. *See Cupp v. Naughten,* 414 U.S. 141, 146-47 (1973). Furthermore, the failure to give an instruction bears a "heavy burden" on the petitioner as "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe,* 431 U.S. 145, 155 (1977). The Petitioner has not made such a showing here, and thus the claim is not cognizable.

In *Ford v. State*, 442 S.E.2d 604 (S.C. 1994), the South Carolina Supreme Court held that trial counsel's failure to request an alibi charge is deficient representation where there is evidence presented the defendant was in another place at the time the crime was committed. However, "since an alibi derives its potency as a defense from the fact that it involves the physical impossibility of the accused's guilt, a purported alibi which leaves it possible for the accused to be the guilty person is no alibi at all." *State v. Robbins,* 271 S.E.2d 319, 320 (S.C. 1980).

Here, the evidence at trial does not support an alibi instruction. The Petitioner admitted to being with a co-conspirator, Wright, that night, but stated that Wright had left the Petitioner at home and then came back with money and that the Petitioner offered to hide it for him. (App. 565.) Trial testimony established that two men entered the Wendy's restaurant shortly after closing after 1:00 a.m. One of the employees, Heather Moniz,

15

testified that she estimated the robbery occurred around 1:15 or 1:17a.m., right after the restaurant had closed at 1:00 a.m. (App. 159-60; 174.) Another employee, Andrew Broussard, also testified the restaurant was robbed right after closing at 1:00 a.m., (App. 177), and lasted a few minutes. (App. 185.) Another employee testified that the robbery occurred "about five or ten minutes after [the [restaurant] closed" at 1: a.m. (App. 196.) Another employee, Melanie Newell, testified that the robbery occurred after closing at approximately 1:10 or 1:15 a.m. and it lasted 15 to 20 minutes. (App. 218.) The responding police officer testified that he was dispatched at 1:15 a.m. (App. 225.) There was testimony that the Petitioner's residence at the time was approximately two minutes away from the Wendy's which had been robbed. (App. 393; 398).

Idonique Rene, a friend of the Petitioner's, testified that the Petitioner was at his house the night of the robbery and the last he saw him was "a little before 1:00 [a.m.]," as the Petitioner told him he was leaving. (App. 485; 491-92; 494.) Rene testified he went to sleep and his wife shook him awake at 1:20 a.m. (App. 487.)[4] Rene further testified that in a statement he made, he had indicated that his wife told him that the Petitioner was on the floor when she got home. (App. 489.) He testified, however, that he could not say if the Petitioner was at his house at 1:15 a.m. (App. 502.)

The trial court declined to instruct the jury on alibi. (App. 608.) The trial court noted that testimony that Rene was woken at 1:20 by his wife and establishing a time that his wife actually entered the home and allegedly saw the Petitioner were two different things. (App. 593-596; 606.) There was no testimony or evidence which established that the Petitioner was elsewhere when the robbery occurred at approximately 1:00 to 1:15 a.m. Because the Petitioner was not entitled to an alibi instruction under South Carolina law, the trial court did not err in refusing to charge the jury on alibi.

---

[4]His wife was his girlfriend at the time.

16

In his response to the Respondent's reply, the Petitioner asks the court to stay this habeas action pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), until the state court rules on his pending second PCR action . (Dkt. # 16 at 8.) In *Rhines*, the Supreme Court addressed how "mixed" petitions containing both exhausted and unexhausted claims should be handled by district courts. The Court in *Rhines* noted the interplay between the one-year statute of limitations in the AEDPA, 28 U.S.C. § 2244(d) (1), and the requirement of *Rose v. Lundy*, 455 U.S. 509 (1982), that court's are to dismiss the entire mixed habeas petition without prejudice in order to effectuate the requirement of "total exhaustion." *Rhines,* 544 U.S. at 274-75. In such cases, petitioners who come to federal court with a mixed petition "run the risk of forever losing their opportunity for any federal review [of their claims]" if the district court dismisses the case without prejudice close to or after the limitations period has expired." *Id.* In *Rhines,* the Court noted that some district courts have adopted a stay and abeyance procedure to deal with this problem: the court stays the petition and holds it in abeyance while the petitioner returns to state court with his unexhausted claims. *Id.* at 275-76.

The Court cautioned, however, that the practice of staying a federal habeas case while a petitioner returns to state court to exhaust his claims should be used sparingly.

> Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. . . .
>
> For these reasons, stay and abeyance should be available only in limited circumstances. Because grating a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure,

> the district court would abuse its discretion if it were to grant
> him a stay when his unexhausted claims are plainly meritless.

*Id.* at 277.

Applying this standard to the facts of the instant case, the undersigned finds that a stay and abeyance is not warranted. In any event, although there may be a remote possibility that the state PCR court will review the claims on the merits in the Petitioner's pending successive PCR application, even if the PCR court ultimately reviews the claims on the merits, any ruling of the District Court that the claims raised in this habeas petition are without merit would not preclude the state PCR court from reaching a contrary conclusion and granting relief. *See Ivey v. Catoe*, 36 Fed.Appx. 718 (4th Cir. 2002).

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (Dkt. # 9) be GRANTED; and the Habeas Petition DISMISSED with prejudice.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>
United States Magistrate Judge

September 28, 2010
Greenville, South Carolina

**The Petitioner's attention is directed to the important notice on the next page.**